## Case No. 9,892.

### MOWRY v. BARBER.

[1 MacA. Pat. Cas. 563.]

Circuit Court, District of Columbia. Jan.. 1858.

PATENTS—JURISDICTION OF COMMISSIONER—QUESTION OF PRIOR USE—WITHDRAWAL OF APPLICATIONS.

[1. The sixth section of the act of 1836 (5 Stat. 119) gives the commissioner jurisdiction to examine and decide the question of prior public use or sale, and to refuse a patent if he finds there has been such use or sale.]

[Cited in Ellethorp v. Robertson, Case No. 4,409; Wickersham v. Singer, Id. 17,610.]

[2. The withdrawal of an application and receiving back $20 of the patent office fee, pursuant to the act of 1836, § 6, is a final abandonment of the claim, and effects a final extinction of all protection, saving, and privilege under the act of 1836, § 7, and no claim to the same invention can be revived by filing a new application. If such new application is filed it will not relate back to the date of the original application so as to avoid the effect of an intervening public use.]

[This was an appeal by Charles Mowry from a decision of the commissioner of patents, in an interference between appellant and H. B. Barber, a prior patentee, whereby a patent was refused to the appellant.]

Barber, the appellee, held a patent for the invention dated July 8. 1856, No. 15,273.

J. S. Brown, for appellant.

MORSELL, Circuit Judge. The first reason of appeal is "because the commissioner of patents has no cognizance of the matter on which his decision was based." The facts in relation to this point are: In August, 1849, the appellant filed a caveat, and on the 1st of March, 1851, filed his application for a patent for improvements in machine for drawing water from wells, &c. This first application was examined and references were given; upon these the application was withdrawn by a letter from the appellant dated the 12th of April, 1852, in which, among other things, he says: "To the commissioner of patents: I hereby withdraw my application for a patent for improvements in a machine for drawing water from wells, &c., now in your office, and request that twenty dollars may be returned to me, agreeably to the provision of the act of congress authorizing such withdrawal." This was done as requested. That provision is to be found in the sixth section of the act of 1836, in these words: "In every such case, if the applicant shall elect to withdraw his application relinquishing his claim to the model, he shall be entitled to receive back twenty dollars, part of the duty required by this act, on filing a notice in writing of such election in the patent office." This, the commissioner states in his report, was, and now is, by the practice of the patent office, final, &c. The application in this case is dated on the 2d day of March, 1857, and filed on the 10th of April, 1857. This, so far as I understand it, is substantially a renewal of the former claim.

The commissioner states in his report, in reply to the reason of appeal already mentioned, that "the decision of the commissioner is based upon the fact of abandonment. The evidence clearly shows that Mowry had been manufacturing and vending said machine for more than two years prior to his present application. His former application (withdrawn in April, 1852) is only admissible as evidence as to priority of invention, but does not affect the question of abandonment." The duty and authority of the commissioner are declared by the various acts of congress, and it is true that he has none besides. Whether he could take cognizance of the matter objected to him in the first reason, as before stated, depends upon the construction of the seventh section of the act of 1836, in these words: "That on the filing of any such application, description and specification, and the payment of the duty hereinafter provided, the commissioner shall make or cause to be made an examination of the alleged new invention or discovery; and if on such examination it shall not appear to the commissioner that the same had been invented or discovered by any other person in this country prior to the alleged invention or discovery thereof by the applicant, or that it had been patented or described in any printed publication in this or in any foreign country, or had been in public use or on sale with the applicant's consent or allowance prior to the application, if the commissioner shall deem it to be sufficiently useful and important it shall be his duty to issue a patent therefor," &c. The first part of this section, though expressed in more general terms, contains an express condition precedent as to the same matter. This provision of the statute, it seems to me, is very explicit in its requirements, and equally so in its intended application to the right in its inchoate state. After the other previous requisites are complied with, and before the granting of a patent, it directs the commissioner to make the examination on the subject, and to decide (of course) on what shall appear to him to be the result, or otherwise it would be idle to require the examination. One part of the subject of his examination is expressly declared to be whether or not the alleged discovery had been "in public use or on sale." This, then, surely gives him cog-

nizance or jurisdiction. If, then, the result of such examination should be that it appeared to him that the alleged invention or discovery had been in public use or on sale contrary to the provision of the statute, ought he, notwithstanding, proceed to grant the patent, that an opportunity might be afforded to the applicant to have the matter submitted to a jury in a court of law? I cannot think so. The same jurisdiction, I think, continues after interference declared and until the patent is delivered, unless otherwise decided on appeal.

In support of the proposition involved in his first reason of appeal, the appellant's counsel bases his argument on the authority of a decision made by Judge Cranch in the case of Heath v. Hildreth [Case No. 6,309], and Pomeroy v. Connison [Id. 11,259], and to the decisions there referred to. It will be seen upon examination of that case that Judge Cranch's allusion is the defense set up of a delay or general abandonment, of which, intention and special circumstances constitute the gist, and the authorities there referred to are of decisions made in cases brought for the infringement of patent rights in a court or courts of law in which, according to their fundamental establishment, the jury forms a constituent part for the trial of issues of fact. Such is not the case of trials before the commissioner. Judge Cranch says: "But the question of forfeiture or abandonment is for the jury upon a trial at law. The first invention is prima facie entitled to a patent, and the commissioner, as before observed, is bound to issue it under the seventh section of the act of 1836, if certain facts should not appear to the commissioner, as therein specified, which specification of facts does not include delay or abandonment; so that the question of delay or abandonment is not by that section submitted to the jurisdiction of the commissioner." It is not my intention to discuss this position of Judge Cranch at this time, or to express any opinion, because I do not think the question now before me requires it. What the commissioner means by the term "abandonment," as the ground of his decision, is the statutory disability in the appellant to assert his right to a patent because of the public use or sale by others, with his knowledge and consent, of said invented machine more than two years before his application for a patent in this case. These terms, as before particularly stated, are among those specified and enumerated in the statute. I think, therefore, that the commissioner had cognizance of the matter.

The second reason is in these words: "Because, even if he had cognizance of the matter, the act of the inventor in the premises was not an abandonment of the invention to the public within the meaning of the law, but, on the contrary, his acts as proved by the testimony in the matter of the interference between his application and Barber's patent show that he still asserted his right to the invention, and intended to secure it by letters-patent, if possible." Third. Because the failure of Mowry's first application having been caused by the act of the commissioner of patents solely, and by no fault on the part of the inventor, and thus the second application having become necessary by the said act of the commissioner of patents, the date of selling the articles by Mowry should be considered in relation to the first and not to the second application. To which the commissioner answers: "Asserting his 'intention to secure a patent if possible,' after he had withdrawn in 1852 and not offering until 1857, and then only upon learning that Barber had obtained a patent for the same thing, and having mean time manufactured and sold said machines for more than ten years prior to applying, appears to invalidate the second reason for appeal. Third. The usual office course was taken. The first application was examined, references were given, and upon these the application was withdrawn pro forma. This was and now is, by the practice of this office, final; and the application thus conditioned can only be (by the custom of this office) available as evidence of date of invention in any future contingency, and can only be again before this office, as such. A subsequent application for the same thing has no necessary connection with the former, except where a case is formally withdrawn to amend, or to represent within a reasonable time for affecting such amendment." These two reasons will be considered together. The question which grows out of them is, what is the effect of withdrawing the first application in this case under the circumstances of receiving back twenty dollars, part of the duty required by the act? Without qualification or any reservation, it seems to be considered in the law as a relinquishment of his (the appellant's) claim to the model. I think it must be considered as finally abandoning the further prosecution of the claim, and effecting an entire extinction of all protection, saving, and privilege under the act of 1839, section 7, and which cannot be revived by any new application for the same invention. If this be correct, then the rule as laid down by the supreme court in the case of Shaw v. Cooper, 7 Pet. 29, applies, which is: "Whatever may be the intention of the inventor, if he suffers his invention to go into public use through any means whatsoever without an immediate assertion of his right, he is not entitled to a patent; nor will a patent obtained under such circumstances protect his right." I agree with the commissioner that the evidence shows that Mowry had been manufacturing and vending said machine for more than two years prior to his present application, and that he is not entitled to a patent.